**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **NO. 3:23-CR-26-1** |
| | : | |
| **SHANE BURNS,** | : | **JUDGE MANNION** |
| | : | |
| **Defendant.** | : | |
| | : | **ELECTRONICALLY FILED** |

# SENTENCING MEMORANDUM

Patrick A. Casey
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

*Attorney for Defendant, Shane Burns*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................ 1

II. THREE STAGES OF SENTENCING ............................................ 1

STAGE 1: Sentencing Guidelines Calculation ..................................... 2

STAGE 2: Departures from the Guidelines ......................................... 6

STAGE 3: Consideration of § 3553(a) Factors ..................................... 8

1. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant. 18 U.S.C. § 3553(a)(1) ........................................ 8

2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense. 18 U.S.C. § 3553(a)(2)(A) ........................................ 17

3. The Need for Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct. 18 U.S.C. § 3553(a)(2)(B) ........................................ 18

4. The Need to Protect the Public from Further Crimes of Defendant. 18 U.S.C. § 3553(a)(2)(C) ........................................ 20

5. The Need to Provide Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner. 18 U.S.C. § 3553(a)(2)(D) ........................................ 21

6. The Kinds of Sentences Available. 18 U.S.C. § 3553(a)(3) ........................ 22

7. The Kinds of Sentence and Sentencing Range Established for—(A) the Applicable Category of Defendant as Set Forth in the Guidelines—(i) Issued by the Sentencing Commission. 18 U.S.C. § 3553(a)(4) ........................ 22

8. Any Pertinent Policy Statement—(A) Issued by The Sentencing Commission. 18 U.S.C. § 3553(a)(5) ........................................ 23

9. Consider the Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct. 18 U.S.C. § 3553(a)(6) ........................................ 23

10. Consider The Need to Provide Restitution to Any Victims of The Offense. 18 U.S.C. § 3553(a)(7) ........................................ 25

III. CONCLUSION: ISSUANCE OF SENTENCE ........................................ 26

# TABLE OF AUTHORITIES

## CASES

*Concepcion v. United States*, 142 S. Ct. 2389 (2022) ..............................................2

*Dean v. United States*, 581 U.S. 62 (2017) .......................................... 12, 13, 18-20

*Gall v. United States*, 552 U.S. 38 (2007) ......................................................12, 15

*Houghlin-Hernandez v. United States*, 589 U.S. 169 (2020) ..................................8

*Kimbrough v. United States*, 552 U.S. 85 (2007) ................................. 8, 10-12, 25

*McClinton v. United States*, 143 S. Ct. 2400 (2023) ...............................................5

*Nelson v. United States*, 555 U.S. 350 (2009) ....................................................8, 25

*Roper v. Simmons*, 543 U.S. 551 (2005) ...............................................................15

*Setser v. United States*, 566 U.S. 231 (2012) ...................................................22, 26

*United States v. Collado*, 975 F.2d 985 (3d Cir. 1992) ...........................................5

*United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006)..............................................2

*United States v. Jackson*, 467 F.3d 834 (3d Cir. 2006) .......................................8, 25

*United States v. Lofink*, 564 F.3d 232 (3d Cir. 2009) ..............................................2

*United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006). ............................23

*Witte v. United States*, 515 U.S. 389 (1995) ............................................5, 6, 10, 11

## STATUTES

18 U.S.C. § 3013 ........................................................................................26

18 U.S.C. § 3553(a) ................................................................ 2, 8, 10-13, 18

18 U.S.C. § 3553(a)(2) ................................................................................25

18 U.S.C. § 3553(a)(2)(A) ...........................................................................17

18 U.S.C. § 3553(a)(2)(B) .................................................................13, 18, 19

18 U.S.C. § 3553(a)(2)(C) ........................................................................20, 22

18 U.S.C. § 3553(a)(2)(D) ...........................................................................21

18 U.S.C. § 3553(a)(3) ................................................................................22

18 U.S.C. § 3553(a)(4) ................................................................................22

18 U.S.C. § 3553(a)(5) ................................................................................23

18 U.S.C. § 3553(a)(6) ................................................................................23

18 U.S.C. § 3553(a)(7) ................................................................................25

18 U.S.C. § 3584(a) ................................................................................22, 26

18 U.S.C. § 3585(a) ....................................................................................26

18 U.S.C. § 3585(b) ....................................................................................26

18 U.S.C. § 3621(a) ....................................................................................26

18 U.S.C. § 3621(e) ....................................................................................26

18 U.S.C. § 841(b)(1)(A) ............................................................................22

18 U.S.C. § 924(c) ......................................................................................18

21 U.S.C. § 841(b)(1)(A) ....................18, 26

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2D1.1(b)(16)(E) ....................4

U.S.S.G. § 2D1.1(b)(5) ....................4

U.S.S.G. § 2D1.1(c)(4) ....................4

U.S.S.G. § 2D1.1, comment. (n. 8(D)) ....................3

U.S.S.G. § 3B1.1(c) ....................4

U.S.S.G. § 3E1.1 ....................4

U.S.S.G. § 5G1.3.................... 5-7, 22, 26

U.S.S.G. § 5G1.3(b) ....................7

U.S.S.G. § 5G1.3, comment. (n. 2)....................5

U.S.S.G. § 5G1.3(b), comment. (n. 2(A))....................7

U.S.S.G. § 5G1.3(b), comment. (n. 2(D))....................7

U.S.S.G. § 5G1.3, comment. (n. 4(E)) ....................7

U.S.S.G. § 5H1.1....................7

U.S.S.G. § 5K2.23....................6

## I. INTRODUCTION

Shane Burns is 26 years old. He has achieved a high school diploma and, since being incarcerated on the instant offense, has earned an associate's degree from Rio Salado College in Tempe, Arizona. He is not married and has no dependents. He is one of three boys born to Kathleen and William Burns. His parents are divorced; however, they remain active in Shane's life, and support him through this difficult process. Shane's two younger brothers, Aidan and Liam, also remain active in Shane's life, and have submitted character letters to the Court. (*See* the character letters submitted to the Court by Shane's family in addition to Lackawanna County Prison Corrections Counselor Michelle Barnard and Program Instructor John Duffy attached hereto as Exhibits "A" through "F.") Shane Burns has taken steps within his power to make amends for his criminal behavior and fully accepts responsibility for his criminal behavior. Shane has submitted a written statement to the Court, *see* his allocution attached hereto as Exhibit "G."

Mr. Burns asks the Court to sentence within the recommendations of the parties and submits the instant memorandum in support of that request.

## II. THREE STAGES OF SENTENCING

The Supreme Court recognized that "a federal judge in deciding to impose a sentence 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it

may come.' [citation omitted]." *Concepcion v. United States*, 142 S. Ct. 2389, 2399 (2022). Generally, no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense when deciding what sentence to impose. *Id.,* at 2400.

Courts must engage in a three-step process when determining an appropriate sentence. First, the Court must calculate the applicable Guideline range. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).[1] Second, the court must determine the basis for any requested departure, and if a departure is warranted, the effect of that departure on Guideline calculation. *Id.* Finally, after considering all factors in accordance with 18 U.S.C. § 3553(a), the Court must impose an appropriate sentence, which may vary from the Guideline range. *Id.*

**STAGE 1: Sentencing Guidelines Calculation**

The United States Probation Office has calculated the Sentencing Guidelines as follows:

- Total Adjusted Offense Level: 39[2]
- Criminal History Level: III[3]

[1] The sentencing procedure is for the Court to (1) calculate the defendant's Guideline sentence, (2) state on the record whether it is granting a departure, and (3) consider the relevant § 3553(a) factors. *United States v. Lofink*, 564 F.3d 232, 237 (3d Cir. 2009).

[2] Pennsylvania Presentence Report ("PA-PSR") ¶ 40.

[3] PA-PSR ¶ 47.

- Advisory Sentencing Range: 324 to 405 months.[4]

***Pennsylvania Offense and Arizona Relevant Conduct***

The presentence report determines the total offense level to be 39 (PA-PSR ¶ 40) and criminal history category to be III. (PA-PSR ¶ 47). The base offense level is 36. (PA-PSR ¶ 30).

The base offense includes the delivery of between 1.2 and 4.0 kilograms of fentanyl in the MDPA. (PA-PSR ¶¶ 1-15). The base offense level also includes relevant conduct from the District of Arizona. (PA-PSR ¶¶ 16-24, and 30). The Arizona drug delivery weight included 3,675.2[5] grams of methamphetamine (92.7 grams and 3,582.5 grams), and 824 grams of fentanyl. (PA-PSR ¶ 30).

The converted drug weight from Arizona is 73,895.4 kgs.[6] The corresponding offense level for the relevant conduct in Arizona is 36. USSG § 2D1.1(c)(2).

The drug weight in the offense conduct in Pennsylvania is between 1.2 and 4.0 kgs of fentanyl.[7] The converted drug weight from Pennsylvania is 3,000 kgs.

---

[4] PA-PSR ¶ 82.

[5] PA-PSR ¶ 30; *see also*, the Arizona Presentence Report at ¶ 20.

[6] U.S.S.G. § 2D1.1, comment. (n. 8(D)).

[7] PA-PSR ¶ 30.

The corresponding base offense level for this amount of converted drug weight is 32. U.S.S.G. § 2D1.1(c)(4).

Further, the PA-PSR finds that U.S.S.G. § 2D1.1(b)(5) applies where "the offense involved the importation of amphetamine or methamphetamine . . . ." This two-level enhancement is applied based upon the inclusion of the relevant conduct. This enhancement is uniquely tied to amphetamine or methamphetamine, neither of which are the subject of the Pennsylvania offense conduct.

The total *additional* offense-level enhancement resulting from the inclusion of the Arizona relevant conduct is 6.

The offense level calculation for the Pennsylvania conduct would be as follows: (i) base offense level, 32 levels (U.S.S.G. § 2D1.1(c)(4)); (ii) criminal livelihood, 2 levels (U.S.S.G. § 2D1.1(b)(16)(E)); (iii) organized/leader, 2 levels (U.S.S.G. § 3B1.1(c)); and (iv) acceptance of responsibility, minus 3 levels (U.S.S.G. § 3E1.1). The adjusted total offense level for the Pennsylvania conduct would be 33. The criminal history category is III. (PA-PSR ¶ 47). The advisory sentencing Guideline range would be 168 months to 210 months.[8]

The United States Supreme Court recognized that "[t]he Guidelines envision that sentences for multiple offenses arising out of the same criminal activity

[8] The parties to the Plea Agreement recommend to the Court that Your Honor sentence somewhere between 151 to 188 months of incarceration. *See*, *United States v. Burns*, 3:23-CR-26-1, Doc. 734, p. 9.

*ordinarily* will be imposed together. However, they also explicitly contemplate the possibility of separate prosecutions involving the same or overlapping 'relevant conduct.' *See* U.S.S.G. § 5G1.3, comment. (n. 2) (addressing cases in which 'a defendant is prosecuted in . . . two or more federal jurisdictions, for the same criminal conduct or for different criminal transactions that were part of the same course of conduct')." *Witte v. United States*, 515 U.S. 389, 404 (1995). The Court noted that "[b]ecause the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility of that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Id.*[9]

The Defendant acknowledges the precedence of *Witte* and the application of *Witte* as the probation office has calculated the sentencing guidelines in the instant case. The Defendant posits an objection to this calculation. The Defendant asserts that the Arizona conduct (i.e., the "relevant conduct") should not be part of the Pennsylvania sentencing. Recent Supreme Court decisions on Double Jeopardy appear to demonstrate heightened concern by the Court regarding successive prosecutions as well as punishments. *McClinton v. United States*, 143 S. Ct. 2400, 2401 (2023). In the instant matter, the Defendant has already been put in jeopardy

[9] In *United States v. Collado*, 975 F.2d 985, 991 n. 5 (1992), the Third Circuit allowed the inclusion of amounts distributed by the defendant "himself or herself, but for which he or she was not convicted or charged." In the matter before the Court, the Defendant has pled guilty to, and will be sentenced for, the drug deliveries within Arizona in *United States v. Burns*, 2:22-CR-1507 (SPL) (D-AZ).

of punishment for the methamphetamine by the guilty plea in Arizona. *See Witte*, 515 U.S. at 412 (Justice John Paul Stevens, dissenting).

The defense requests the Court sentence within the range recommended by the parties (i.e., between 151 and 188 months), and herein below submits a request for a downward departure and a downward variance.

**STAGE 2: Departures from the Guidelines**

A downward departure is warranted pursuant to § 5G1.3 to achieve a reasonable punishment for the instant offense. *See also,* U.S.S.G. § 5K2.23. Based upon the argument in the immediately preceding section, "STAGE 1: Sentencing Guideline Calculations," the defense requests the Court depart to a sentence of 151 months of incarceration in recognition of, among other reasons, the anticipated federal sentence in the District of Arizona (which involves the same conduct identified as "relevant conduct" in Pennsylvania). *See also*, *Witte*, 515 U.S. at 404.

A departure is also requested for the time Mr. Burns has served since his arrest on November 2, 2022. Specifically, it is requested that the Court depart commensurate with the number of months expired from November 2, 2022 to the date of sentencing in the instant action, which is authorized by U.S.S.G. § 5G1.3(d). The *Guidelines Manual* states as follows:

> However, in an extraordinary case involving an undischarged term of imprisonment under [U.S.S.G. § 5G1.3] subsection (d), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case

> in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentences. Nevertheless, it is intended that a departure pursuant to this application note result in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.

U.S.S.G. § 5G1.3, comment. (n. 4(E)); *see also*, U.S.S.G. § 5G1.3(b) and comment. (n. 2(A) and (D)).

The defense asks the Court to consider a downward departure due to the defendant's youthfulness at the time of the offense or prior offenses. *See*, U.S.S.G. § 5H1.1. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in the criminal justice systems, including environment, adverse childhood experiences, and substance use. *Id*. "In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into adulthood." *Id*. The defense submitted under seal a Mitigation Evaluation Report prepared by Holly Salisbury, Psy.D., psychologist, of Maitri Psychological Services, PLLC. Shane Burns was born on July 17, 1999. Mr. Burns was between twenty-one and twenty-two during the offense conduct in the instant case. (April 2020 (PA-PSR ¶ 42) to November 2022 (PA-PSR ¶ 22)).

**STAGE 3: Consideration of § 3553(a) Factors**

The Defendant requests the Court to exercise its discretion and issue a downward variance from the advisory Guideline range. *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Jackson*, 467 F.3d 834, 838-39 (3d Cir. 2006). The Guidelines are not only not mandatory on sentencing courts, they are also not presumed to be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The objective is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a). *Kimbrough*, 552 U.S. at 101. Congress instructed sentencing courts to impose sentences that are "sufficient, but not greater than necessary" to comply with certain basic objectives, including the need for just punishment, deterrence, protection from the public, and rehabilitation. *Houghlin-Hernandez v. United States*, 589 U.S. 169, 173 (2020).

1. **The Nature and Circumstances of the Offense and the History and Characteristics of Defendant. 18 U.S.C. § 3553(a)(1)**

***Nature and Circumstances of the Offense***

Shane Burns recognizes the weight and seriousness of the instant prosecution, the significance of the harm done by his conduct, and the scale of his criminal history. Mr. Burns accepts responsibility for his criminal actions. The advisory Guideline range is greatly impacted by the relevant conduct (i.e., advisory Guideline range with the relevant conduct is 324-425 months of incarceration). The parties to the Plea Agreement submit a recommendation to the Court that the

Court sentence Mr. Burns somewhere between 151 and 188 months of incarceration. It is recognized that a separate case in Arizona (*United States v. Burns*, 2:22-CR-01507-SPL), which fully incorporates the relevant conduct of the PA-PSR, will result in a federal sentence of up to 108 months of incarceration. Shane Burns pled guilty to that offense and is awaiting sentencing. *See United States v. Burns*, 2:22-CR-01507-SPL, Doc. 58.

Mr. Burns pled guilty in the Middle District of Pennsylvania (MDPA) to conspiracy to distribute in excess of 1.2 kilograms but less than 4 kilograms of fentanyl. *United States v. Burns*, 3:23-CR-26 (MEM), Doc. 734 (Plea Agreement). A mandatory minimum sentence of 120 months of incarceration applies. The Government and Defendant, pursuant to paragraph 10(d) of the Plea Agreement, recommend to the Court that it impose a sentence within a range of 151 to 188 months of incarceration. *Id.*

The MDPA Presentence Report (PA-PSR) calculates the sentencing Guidelines based upon the "offense conduct" which occurred in Pennsylvania, and the "relevant conduct" which is composed of the drug transactions charged in Arizona. *United States v. Burns*, CR-22-1507 (SPL). *See* PA-PSR ¶ 30. The combination of this and other enhancements results in an advisory Guideline imprisonment range of 324 to 405 months of incarceration. A significant disparity exists between the range recommended by the MDPA Plea Agreement and the

advisory Guideline range. The Defendant requests the Court to vary to a sentence within the Plea-Agreement-recommended range. The Defendant requests a sentence of 151 months of incarceration. The Defendant also requested a departure from the sentencing Guidelines pursuant to *Witte v. United States*, 515 U.S. at 404. The defense asks, as a separate basis, that the District Court vary from the Guidelines pursuant to 18 U.S.C. § 3553(a) to a sentence of 151 months.

As indicated above, the Arizona relevant conduct essentially doubles the Defendant's sentencing Guidelines. The Pennsylvania conduct (without the Arizona conduct) would be an advisory Guideline range of approximately 168-210 months of incarceration. The advisory Guideline range *with* the Arizona relevant conduct is 324-405 months of incarceration. The defense requests the Court view the asymmetrical application of relevant conduct to warrant a variance in light of the fact that the relevant conduct will be fully addressed by the district court in Arizona upon the Defendant's sentencing in *United States v. Burns*, 2:22-CR-01507-SPL (D-AZ). *Kimbrough*, 552 U.S. at 92-93. As an example, in *Kimbrough*, the Supreme Court ratified the district court's original variance downward based upon a determination that the crack Guidelines were disproportionate and had an unjust impact upon the sentencing of the defendant. *Kimbrough*, 552 U.S. at 93 and 110-111. The Court noted that it is reasonable for "a district court to conclude when sentencing a particular defendant that the crack/powder disparity yield a

sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Id.* at 110. Similarly in the case before the Court, it is submitted that the addition of the relevant conduct for which the Defendant will be punished in another district (i.e., Arizona), yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Justice John Paul Stevens recognized the illogic of an asymmetrical impact from a relevant conduct calculation in his dissent in *Witte*, 515 U.S. at 412. The defendant in *Witte* was prosecuted and sentenced for distribution of marijuana. Witte was subject to much higher Guidelines than just the marijuana weight as his Guidelines were greatly increased by *relevant conduct* incorporating unprosecuted cocaine deliveries. Following sentencing, Witte was indicted for the cocaine deliveries. The majority opinion found this to not be a violation of the Double Jeopardy clause. However, Justice Stevens dissented as follows:

> In my view, the Court's failure to recognize the critical distinction between the character of the offender and the character of the offense, as well as the Court's failure to recognize the change in sentencing practices caused by the Guidelines, cause it to overlook an important and obvious violation of the Double Jeopardy Clause.

*Witte,* 515 U.S. at 412. (Stevens, J., dissenting).

The application of relevant conduct can sometimes be the circumstance where the "tail wags the dog of the substantive offense. [string cite omitted]" *Id*., at 403. Justice Scalia noted in *Kimbrough* that "…the district court is free to make its

own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 552 U.S. at 113 (Scalia, J. concurring). Likewise, in *Gall v. United States*, 552 U.S. 38 (2007), the Court rejected any requirement that there be any "extraordinary" circumstance or a percentage of gauging a variance. *Id.*, at 47. This Court's variance in the instant case from the Guidelines to the Plea-Agreement-recommended range would be well within the reasonable exercise of discretion of the Court.

In *Dean v. United States*, 581 U.S. 62 (2017), the sentencing judge was confronted with a defendant facing a mandatory minimum sentence of 30 years to run consecutive to substantive offenses which carried a low-end advisory Guideline range of 84 months. The trial court varied from 84 months to one day on the non-mandatory sentence. The government argued, and the circuit agreed, that the sentences must be calculated and imposed separately. Chief Justice John G. Roberts did not agree. Justice Roberts emphasized that the sentencing judge must consider the parsimony clause when considering the "nature and circumstances of the offense and history and characteristics of the defendant." *Id.*, at 67. The Court noted that it is appropriate to use § 3553(a) factors in determining an aggregate prison term comprising separate sentences for multiple convictions. *Id.* The Court noted that "Dean committed the two robberies at issue here when he was 23 years old." *Id.* The Court noted that the mandatory minimum sentence "surely bears on

whether—in connection with his predicate crimes—still more incarceration is necessary to protect the public." *Id.* In the case at bar, Mr. Burns faces not only a ten-year mandatory minimum sentence in Pennsylvania, but also a sentence of incarceration in Arizona. Mr. Burns was 21 and 22 years old when he committed these offenses. This Court is empowered under § 3553(a) to consider the fact that the Arizona conduct influenced the Pennsylvania advisory Guidelines. As Justice Roberts indicated in *Dean*, ". . . [I]n considering 'the need for the sentence imposed . . . to afford adequate deterrence,' § 3553(a)(2)(B), the District Court could not reasonably ignore the deterrent effect" of the mandatory minimum sentence. *Dean*, 581 U.S. at 67.

***History and Characteristics of Defendant***

Submitted separately under seal to the Court is a Mitigation Evaluation Report prepared by Holly Salisbury, Psy.D., of Maitri Psychological Services, PLLC, 2211 E. Highland Ave., Suite 170 Phoenix, Arizona. Dr. Salisbury provides to the Court an extensive review of the background of the Defendant and the episodes of his life leading up to the offense of conviction.[10] Dr. Salisbury examined Mr. Burns at Central Arizona Florence Correctional Complex

[10] Since the Mitigation Evaluation Report will be filed under seal, defense counsel will make very limited references to it in the instant Memorandum.

(CAFCC[11]) on April 5, 2023 at the request of Mr. Burns' counsel in Arizona, Attorney Larry Kazan.

Shane Burns was diagnosed with attention deficit hyperactivity disorder (ADHD) in 5th grade. He was prescribed Ritalin in 6th grade. His grades improved and his focus improved. In the 7th grade he discontinued taking Ritalin. He did not like the way it made him feel. Since his incarceration at Lackawanna County Prison in 2024, he has been prescribed Lamictal for manic depressive symptoms.

***Youthful Defendant***

Dr. Salisbury commented how it is worth noting that Mr. Burns is 23 years old, since it is well documented in literature that the adolescent brain is not fully matured until approximately the age of 25.

Mr. Burns began using drugs at 12. He began with marijuana. At age 14 he began using cocaine. He continued his illegal drug use until his arrest at age 22. He has never had drug abuse treatment. Dr. Salisbury's evaluation identifies Mr. Burns' severe cannabis, cocaine, and alcohol use disorders. As described in the section above regarding requested departures, certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in the criminal justice system, including environment, adverse childhood experiences, and substance abuse. In addition, youthful individuals generally are

[11] CAFCC is a privately owned and operated (by Corrections Corporation of America) housing prisoners for the United States Marshal's Service and other law enforcement organizations.

more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into adulthood. Shane Burns was born on July 17, 1999. Mr. Burns was between twenty and twenty-three during the offense conduct in the instant case. The Court in *Gall* recognized that "a lack of maturity and an underdeveloped sense of responsibility are qualities that 'often result in impetuous and ill-considered actions.'" *Gall*, 552 U.S. at 58 *citing Roper v. Simmons*, 543 U.S. 551, 569 (2005). Brian Gall was 21 at the time of his offense, and the Court affirmed the sentencing judge's variance in which the sentencing judge gave significant weight to studies showing impetuous behavior by persons under the age of 18. *Gall*, 552 U.S. at 59. The Court highlighted consideration of age by noting *Roper* and stating, "[w]hile age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." *Gall*, 552 U.S. at 58.

At age 16 Mr. Burns was involved in an incident where the person to whom he was selling drugs was in a car. When the car began to pull away without paying for the drugs, Mr. Burns attempted to retrieve the drugs. He was carried along, by the moving car, beaten on the head, and ultimately fell to the ground. He suffered a concussion and a loss of consciousness. He was treated at an urgent care.

As a senior in high school Mr. Burns was living on his own in an apartment. Two men came into the apartment, physically assaulted him, and put a gun into his

mouth demanding his money and drugs. He was being pistol whipped when the assaulter heard a neighbor, and the attackers fled. He avoided his family due to the physical injuries he suffered.

Dr. Salisbury noted that posttraumatic distress may be reduced through engagement in self-destructive or self-injurious behavior, that may include sexual behaviors. His testing scores are associated with individuals who report frequent feelings of depression and may view themselves as inadequate or worthless. Dr. Salisbury's report says that behavioral observations, Mr. Burns' self-report, and information obtained from collateral sources indicates Mr. Burns meets criteria for a diagnosis of *Bipolar II Disorder*. Since he has been detained at the Lackawanna County Prison, he has been prescribed Lamictal which is the brand name for the generic drug lamotrigine which is medication used for treatment of bipolar disorder. Its mechanism of action involves stabilizing electrical activity in the brain by blocking certain sodium channels. It is known to prevent depressive episodes.

Shane Burns affirmatively acknowledges his significant criminal history. *See*, Exhibit "G" attached. Mr. Burns accepts responsibility for his criminal conduct: "I apologize to those whom I sold drugs. Families were ruined. I know saying sorry doesn't fix what I did. I was creating drug addicts, getting people sent to prison, and destroying their families and the people around them." *Id.* Mr.

Burns understands that he is facing a sentence in excess of ten years. He said, "I'm now facing a significant sentence, and I know it's because of the choices I made. I have caused so much harm, and I understand that I deserve to be punished." He said, "I know I need to use this time to change. I need to be a productive member in prison just as I would when I get out by respecting others and working honestly." *Id*.

***Reasons to Be Hopeful***

Dr. Salisbury identified reasons to consider in mitigation. Mr. Burns presented with strengths that may be utilized moving forward. He presents as a highly intelligent, motivated, and resourceful man who expresses love and gratitude for his relationships with his family member. He has expressed insight into his underlying mental health issues as well as his tendency to use alcohol and drugs to self-medicate his symptoms. He has high intellectual functioning and recently achieved an associate's degree.

2. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense. 18 U.S.C. § 3553(a)(2)(A)**

***Reflect the Seriousness of the Offense; Promote Respect for the Law; Provide Just Punishment for the Offense***

The sentence of between 12.5 years and 15.5 years of incarceration reconciles the seriousness of the offense, the need to promote respect for the law, and the provision of just punishment. These factors are significant and weigh in

favor of the recommended sentence. The Plea-Agreement-recommended sentence fully addresses the seriousness of the offense, promotion of respect for the law, and just punishment.

### 3. The Need for Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct. 18 U.S.C. § 3553(a)(2)(B)

***Deterrence***

In *Dean*, 581 U.S. 67, the Supreme Court preceded its review of the § 3553(a) sentencing factors by underscoring the parsimony principle: ". . . a broad command that instructs court to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection from the public, and rehabilitation." The Court determined that trial courts may consider other potential sentences—including mandatory minimums—in fashioning sentences in multiple-count sentencings. The Court in *Dean* embraced the sentencing court's consideration of the mandatory minimum sentences when considering both "the need to protect the public" and affording "adequate deterrence." *Id.*, at 67-68. The sentencing court noted that Levon Dean Jr., defendant, committed the crimes when he was 23 and he would serve a lengthy sentence pursuant to a mandatory minimum requirement (i.e., 18 U.S.C. § 924(c)).

Mr. Burns is the subject of a mandatory minimum sentence of ten years. PA-PSR ¶ 81; 21 U.S.C. § 841(b)(1)(A). The Plea Agreement—to which Mr. Burns bound himself—recommends to this Court a sentence of between 151 months (approximately 12.5 years) and 188 months (approximately 15.5 years) of incarceration. Consequently, even if this Court were to impose the minimum Plea-Agreement-recommended sentence of 151 months, it is estimated that he would spend at least ten years in prison. As the Court emphasized in *Dean*, the fact that Mr. Burns (at 26) will not be released for 10 years "surely bears on whether . . . still more incarceration is necessary to protect the public." *Id.*, at 68.

Mr. Burns' sentence will be as long or longer than any of those charged in the conspiracy who also pled guilty. (*See* below the chart comparing the defendants in the conspiracy in the instant action.) The deterrence affect of ten years or more in a federal prison is substantial. Added to the issue of deterrence is the fact that he will be sentenced in Arizona as well. As the chief justice noted in *Dean*: ". . . [I]n considering 'the need for the sentence imposed . . . to afford adequate deterrence,' § 3553(a)(2)(B), the District Court could not reasonably ignore" the deterrent effect of the mandatory minimum sentence. *Dean*, 581 U.S. at 67.

**4. The Need to Protect the Public from Further Crimes of Defendant. 18 U.S.C. § 3553(a)(2)(C)**

***Prevent Further Crimes of Defendant***

If the Court were to impose the minimum sentence recommended by the Plea Agreement of 12.5 years of incarceration, one can be assured that the public will be protected for over a decade. Mr. Burns during his pretrial detention (over two and one half years) has participated in prison life constructively and currently serves as a trustee at the Lackawanna County Prison. He has taken and completed college courses sufficient to achieve an associate's degree.

The future behavior of criminal defendants cannot be forecasted. However, federal district courts are vested by the United States Constitution (and, by the public) to render judgment by applying the sentencing principles legislated by Congress: punishment, deterrence, protection of the public, rehabilitation, in light of the nature of the offense, and the history and characteristics of the defendant. *Dean*, 581 U.S. at 67. It is respectfully submitted that in this instance, twelve and a half years of incarceration significantly weighs in favor of the Court determining the sentence to be sufficient, but not greater than necessary.

### 5. The Need to Provide Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner. 18 U.S.C. § 3553(a)(2)(D)

***Educational Training and Other Correctional Treatment***

In December 2023, Shane Burns earned an associate's degree from Rio Salado College, Tempe, Arizona while incarcerated. (PA-PSR ¶ 68). Shane has also earned several certificates of completion and achievement while incarcerated. (*See* Shane's associate in arts degree and various certificates attached hereto as Exhibits "H" through "T."). Mr. Burns intends to continue his education as he serves this anticipated lengthy sentence of incarceration. He has demonstrated a pattern of seeking educational opportunities at every correctional facility to which he has been placed. During his time spent incarcerated at Columbia County Prison, Mr. Burns completed courses in Money, Banking and Measurements, Pennsylvania History and Geography, as well as Reading and Comprehension. (*See* Exhibits "I" through "K."). Moreover, Mr. Burns completed additional courses in Drug and Alcohol Education, Healthy Relationships, Reentry/Building Life After Incarceration, and Parenting. (*See* Exhibits "L" through "Q."). Most recently, Mr. Burns completed courses in Drug and Alcohol Education, Anger Management, and Emotional Intelligence. (*See* Exhibits "R" through "T.").

Data shows an inverse relationship between education level and recidivism. The Bard Prison Initiative, which has provided college degrees to more than 500

incarcerated individuals in New York State prisons since 1999, reports that fewer than 4% of its graduates have returned to prison—a significantly lower recidivism rate than the national average.[12] Mr. Burns' educational achievements address in part the Court's obligation under 18 U.S.C. § 3553(a)(2)(C) to consider "the need to protect the public from further crimes of the defendant." Mr. Burns' youthfulness, combined with his ongoing mental health treatment, and strong family support, presents a lower statistical risk to public safety than the sentencing Guideline range would suggest.

**6. The Kinds of Sentences Available. 18 U.S.C. § 3553(a)(3)**

***Available Sentences***

The statutory maximum penalty provided for this offense is life imprisonment. PA-PSR ¶ 83; 18 U.S.C. § 841(b)(1)(A). The statutory mandatory minimum is 120 months of incarceration. PA-PSR ¶ 83; 18 U.S.C. § 841(b)(1)(A).

**7. The Kinds of Sentence and Sentencing Range Established for—(A) the Applicable Category of Defendant as Set Forth in the Guidelines—(i) Issued by the Sentencing Commission. 18 U.S.C. § 3553(a)(4)**

The Court may impose a sentence concurrent with all other sentences. U.S.S.G. § 5G1.3, 18 U.S.C. § 3584(a), and *Setser v. United States*, 566 U.S. 231, 236, 245 (2012) (court may order sentence concurrent or consecutive to an anticipated sentence). The Guidelines are now only one factor among many which

[12] Robert E. Fullilove, et al, *The Bard Prison Initiative: Education, Incarceration, and Public Health*, 110 (S1), Am. J. Public Health, S33-34, 2020.

can influence a discretionary sentence. *United States v. Vampire Nation*, 451 F.3d 189, 196 (3d Cir. 2006). As described above, the defense urges the Court to vary from the advisory Guideline range to 151 months.

**8. Any Pertinent Policy Statement—(A) Issued by The Sentencing Commission. 18 U.S.C. § 3553(a)(5)**

***Policy Statement***

No additional policy statement is relevant beyond the discussion above.

**9. Consider the Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct. 18 U.S.C. § 3553(a)(6)**

***Avoid Sentence Disparities***

Mr. Burns' conduct will likely receive the most severe sentence of those who plead guilty in the charges in the charged conspiracy.

Kevin Jones was convicted after a jury trial. A mandatory minimum sentence applied to Mr. Jones. The Court did not have authority to sentence below 180 months.

The sentencing range recommended by the parties in *United States v. Burns* to the Court, even at the bottom end, is more than two years longer than the next highest sentence:

| Name | Term Number | Date of Sentencing | Judgment Docket No. | Sentence |
|---|---|---|---|---|
| Jones, Kevin | 3:23-CR-26-4 | 10/23/24 | Doc. #716 | 180 months incarceration |
| Thompson, Robert | 3:23-CR-26-12 | 10/1/24 | Doc. #686 | 120 months incarceration |
| Wigfall, Rahmel | 3:23-CR-26-5 | 9/25/24 | Doc. #680 | 120 months incarceration |
| Bell, Howard | 3:23-CR-26-3 | 10/11/24 | Doc. #703 | 120 months incarceration |
| Grayson, Yuamir | 3:23-CR-26-14 | 3/6/24 | Doc. #388 | 100 months incarceration |
| Faulkner, Maurice | 3:23-CR-26-7 | 8/26/24 | Doc. #662 | 60 months incarceration |
| Patacky-Beghin, Christina | 3:23-CR-26-2 | 3/12/25 | Doc. #764 | 33 months incarceration[13] |
| Smart, Samantha | 3:23-CR-26-6 | 7/9/24 | Doc. #594 | 24 months incarceration |
| Grady, Fatieem | 3:23-CR-26-13 | 3/13/25 | Doc. #774 | 24 months incarceration |
| Colon-Acosta, Shayna | 3:23-CR-26-9 | 3/18/25 | Doc. #778 | Time served |
| Smith, Mercedes | 3:23-CR-26-8 | 7/8/24 | Doc. #595 | 18 months incarceration |
| Smyden, Rachel | 3:23-CR-26-15 | 7/24/24 | Doc. #614 | 3 years' probation; 6 months home confinement |
| Twyman, Giavanna | 3:23-CR-26-10 | 8/23/24 | Doc. #643 | 3 years' probation; 6 months home confinement |
| Cleveland, Sabrina | 3:23-CR-26-11 | N/A | Doc. #782 | Dismissed |

[13] This reflects an adjustment for Ms. Patacky-Beghin of 12 months for time served in District of Arizona, making sentence concurrent with sentence being served under 2:22-CR-1507-SPL-2; Supervised Release of 4 years; and Special Assessment of $100.

**10. Consider The Need to Provide Restitution to Any Victims of The Offense. 18 U.S.C. § 3553(a)(7)**

***Restitution***

Restitution is not a sentencing issue. (PA-PSR ¶ 93). The defense concurs in the Probation Officer's findings.

***Requested Variance***

The Defendant requests a variance from the Guideline range to 151 months of incarceration. The Defendant requests the Court to exercise its discretion based upon multiple legal bases. The United States Supreme Court has encouraged district courts to consider variances from the Guideline range. *Kimbrough*, 552 U.S. at 109; *Jackson*, 467 F.3d at 838-39. The Guidelines are not only not mandatory on sentencing courts, they are also not presumed to be reasonable. *Nelson*, 555 U.S. at 352. The objective is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2). *Kimbrough*, 552 U.S. at 101.

## III. CONCLUSION: ISSUANCE OF SENTENCE

It is respectfully requested that the Court impose the following sentence: (1) incarceration for 151 months concurrent with all other sentences pursuant to U.S.S.G. § 5G1.3, 18 U.S.C. § 3584(a), and *Setser v. United States*, 566 U.S. 231, 236 (2012); (2) credit toward the service of imprisonment from November 2, 2022 (the date of arrest) pursuant to 18 U.S.C. § 3585(a) and (b); (3) special assessment of $100 pursuant to 18 U.S.C. § 3013; (4) a term of supervised release of five years pursuant to 21 U.S.C. § 841(b)(1)(A); (5) waive a fine as the Defendant is indigent and has no ability to pay a fine; (6) recommend to the BOP residential drug treatment (RDAP) pursuant to 18 U.S.C. § 3621(a) and (e); (7) recommend to the BOP credit for all good behavior starting with his initial arrest on November 2, 2022; and (8) recommend to the BOP designation in a facility nearest to his home residence in Phoenix, Arizona.

Respectfully submitted,

/s/ Patrick A. Casey
Patrick A. Casey

*Attorney for Defendant, Shane Burns*

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: December 5, 2025

**CERTIFICATE OF SERVICE**

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Sentencing Memorandum was served upon the following counsel of record via the Court's ECF system on this 5th day of December 2025.

Gerard T. Donahue, Esquire
United States Attorney's Office
235 North Washington Avenue
Suite 311
Scranton, PA 18501

/s/ Patrick A. Casey
Patrick A. Casey